FOREST COUNTY POTAWATOMI COM-MUNITY OF WISCONSIN, a federally recognized Indian tribe; Bingo Commission, Forest County Potawatomi Community; Lois Crowe, Chairperson of the Bingo Commission; and the Indian Community School of Milwaukee, Inc., a Wisconsin charitable corporation, Plaintiffs,

v.

James E. DOYLE, Individually and as Attorney General of the State of Wisconsin; John O. Norquist, Individually and as Mayor of the City of Milwaukee; Grant F. Langley, Individually and as City Attorney for the City of Milwaukee; Phillip Arreola, Individually and as Chief of Police of the City of Milwaukee; Lee Jensen, Commissioner of Building Inspection, City of Milwaukee; City of Milwaukee, a municipality of the State of Wisconsin; E. Michael McCann, Individually and as District Attorney for the County of Milwaukee; and Richard Artison, Individually and as Sheriff of the County of Milwaukee, Defendants.

No. 92-C-576-C

United States District Court, W.D. Wisconsin.

Sept. 1, 1992.

---

Joseph L. Young, Tribal Atty., Lac Du Flambeau Band, Crandon, Wis., for Forest County Potawatomi Comm. Potawatomi Comm. Bingo Comm.

Eric Dahlstrom, Rothstein, Walther, Donatelli, Hughes, Dahlstrom & Cron, Phoenix, Ariz., for Louis Crowe.

Joseph F. Preloznik, Madison, Wis., for Indian Comm. School Milwaukee.

Burneatta Bridge, Asst. Atty. Gen., Madison, Wis., for James E. Doyle.

Grant F. Langley, Milwaukee City Atty., Milwaukee, Wis., for John O. Norquist, Grant F. Langley, Philip Arreola, Lee Jensen and City of Milwaukee.

Stephen L. Morgan, Madison, Wis., for E. Michael McCann. Robert Ott, Corp. Counsel, Milwaukee, Wis., for Richard Artison.

## OPINION AND ORDER

CRABB, Chief Judge.

This is an action for injunctive and declaratory relief and money damages in which plaintiffs seek to have defendants enjoined from using any form of state power to prevent plaintiffs and their authorized agents from operating certain gaming activities on Indian trust lands within the City of Milwaukee. In addition, plaintiffs seek a declaration of the Forest County Potawatomi Community's right to conduct such gaming under the terms of the 1992 Gaming Compact entered into by them with the State of Wisconsin, and they seek damages for any injuries suffered as a result of unlawful acts committed by defendants in the course of their efforts to prevent the tribe and the commission from engaging in compact-authorized gaming. The case is before the court on plaintiffs' motion for a preliminary injunction that would restrain defendants from taking any action directed at halting or curtailing the gaming activities that the plaintiff tribe and its bingo commission are conducting in Milwaukee.

All of the defendants except the attorney general contend that the court lacks jurisdiction to entertain the case because the only issues actually in dispute concern the interpretation of the language and meaning of an agreement entered into by the plaintiff tribe and the City of Milwaukee and do not implicate any federal law or constitutional provision. (All further references to "defendants" will be to all defendants except the attorney general, who does not join in the arguments of the other defendants.) Defendants argue that abstention is required to allow the state supreme court to rule on the proper scope of constitutionally permissible gambling in the State of Wisconsin, an issue that has been raised in a petition for an original proceeding filed in the supreme court by two of the defendants. On the merits, defendants contend that plaintiffs have failed to establish the prerequisites of a grant of preliminary relief.

I conclude that this court has subject matter jurisdiction because plaintiffs are alleging issues arising under the laws of the United States; that defendants have shown no basis for abstention; and that plaintiffs have shown that they have a better than negligible chance of succeeding on their claim because they are operating the disputed games under the explicit authorization of the State of Wisconsin and the

Secretary of the Interior. Plaintiffs have shown also that the harm they may suffer in the absence of a preliminary injunction is irreparable, that the balance of harms is in their favor and that granting the injunction will not harm the public interest. In sum, plaintiffs have made the showing necessary to obtain preliminary relief.

For the sole purpose of deciding this preliminary motion, I find from the findings of fact proposed by the parties that the following facts are not in dispute.

## FACTS

Plaintiff Forest County Potawatomi Community of Wisconsin is a federally recognized Indian tribe. Under its revised constitution approved by the Department of Interior on September 1, 1981, the territory and jurisdiction of the tribe includes lands acquired by the federal government for the tribe under any laws of the United States. The tribe exercises governmental authority over the reservation, as well as over land held in trust for the benefit of the Potawatomi Tribe by the United States in the City of Milwaukee, except as otherwise provided by law.

On June 1, 1988, in connection with efforts by the tribe to acquire land in the City of Milwaukee for the operation of an Indian school and a gaming operation, the Common Council for the City of Milwaukee passed a resolution expressing opposition to the granting of trust status for two sites in the city (known as the Concordia College campus and the Menomonee Valley sites) unless agreement was reached with the tribe and the Indian Community School and approved by the United States Department of the Interior conferring jurisdiction upon the city to enforce its ordinances, "except those regulations relating to gaming on the Menomonee Valley site." At this time, the parties' understanding was that gaming would be limited to high stakes bingo (which is classified as Class II gaming under the Indian Gaming Regulatory Act, 25 U.S.C. § 2703(7)(A)(i)). Subsequently, the

city and the tribe negotiated a Cooperative and Jurisdictional Agreement under which the city maintained jurisdiction to enforce its ordinances, except those relating to gaming, on the Menomonee Valley site. On July 25, 1989, the Common Council passed a resolution supporting the grant of trust status to the lands sought by the tribe. On August 12, 1989, the tribe approved the agreement reached with the city, as well as agreements with the school, the Bingo Commission and Omni Bingo. On September 28, 1989, the Milwaukee Board of Zoning Appeals approved a special use exception for the Menomonee Valley site. The plan presented to the board indicated that "[T]he proposed use of the subject property is as an activity center and bingo hall."

On July 10, 1990, the Department of the Interior's Assistant Secretary for Indian Affairs, Eddie Brown, determined that acquisition of the Menomonee Valley site and the Concordia Campus site in trust status on behalf of the tribe would be in the best interest of the tribe and not detrimental to the surrounding community and he gave his approval of the Cooperative and Jurisdictional Agreement and its amendment. By letter dated July 20, 1990, Wisconsin governor Tommy Thompson informed the assistant secretary that he agreed with the secretary's determination to approve the tribe's trust status application for the Menomonee Valley land. The governor acknowledged the tribe's plans for a "high stakes bingo and casino operation" on the Menomonee Valley site.

On July 20, 1990, the Redevelopment Authority of the City of Milwaukee executed a warranty deed to the United States in trust for the benefit of the tribe, conveying fee simple title to the Menomonee Valley land, free and clear of all encumbrances except restrictions of use required by the Redevelopment Plan for Menomonee Valley Industrial Area "A" and the terms and conditions of the March 30, 1990 Cooperation and Jurisdiction Agreement with the city and its amendment of July 25, 1990.[1] The

---

**1.** None of the parties explains the oddity of attaching a document executed on July 25, 1990

to a document executed on July 20, 1990.

warranty deed was approved by the Area Director, Bureau of Indian Affairs, on July 25, 1990.

On July 20, 1990, the tribe executed a Bureau of Indian Affairs-approved lease with the plaintiff Indian Community School under which the school leased the Concordia College land and the Menomonee Valley site for the purpose of operating a school and associated facilities on the Concordia College land and subleasing the Menomonee Valley site to the plaintiff Bingo Commission for construction of a facility to generate revenue through gaming activities.

On July 24, 1990, Governor Thompson wrote to Assistant Secretary Brown, stating that his letter was intended to supersede his letter of July 20 and expressing his opinion that the gaming establishment on the Menomonee Valley site would be in the best interests of the tribe and its members and not detrimental to the surrounding community, "so long as limited to Class II gaming."

The Cooperation and Jurisdictional Agreement signed with the city by the tribe and by the school contained the following provision relating to the trust sites:

2. *Preamble:* On June 10, 1987, the Tribe submitted to the Department of Interior, Bureau of Indian Affairs, an application for Trust Status for the Concordia College Campus property and the Menomonee Valley land. Pursuant to a resolution, Common Council File No. 880381, dated June 1, 1988, the Aldermen and Mayor of the City have informed the Bureau of Indian Affairs that they oppose the grant of trust status unless a definitive agreement is reached providing that all civil regulatory enactments, including, but not limited to all City ordinances and regulations, continue to apply to the Condordia [sic] College Campus property and the Menomonee Valley land as if they had not been taken into trust, with the exception that the Menomonee Valley land may be used for such gaming purposes as are permitted on other trust land within the State of Wisconsin. It is the intent of the parties that this Agreement achieve that result, and upon its execution by the parties, the City will support trust status for the Concordia College Campus property and the Menomonee Valley land.

5. *Specific Undertakings by the Tribe and Indian Community School:* In addition to, but not limited to the undertakings set forth in paragraph (9) nine, the Tribe and Indian Community School shall, commencing with the effective date of this Agreement:

\*       \*       \*       \*       \*       \*

(g). No gaming activity shall take place within the boundaries of the Concordia College Campus property. The Menomonee Valley land may be used for such gaming purposes as are permitted on other trust land within the State of Wisconsin.

(h). The Tribe shall not, and shall not permit any entity affiliated with it to, promulgate or adopt any tribal ordinance or regulation which would preempt or supersede any regulatory authority now exercised by the City, except that with respect to the Menomonee Valley land, the Tribe may promulgate and adopt a regulation regulating the conduct of games permitted on the trust land within the State of Wisconsin.

\*       \*       \*       \*       \*       \*

8. *Applicable Law:* The civil and regulatory laws, ordinances and regulations of the City of Milwaukee and State of Wisconsin which currently apply and are in force and effect, or may in the future be adopted, with respect to the Concordia College Campus property and the Menomonee Valley land, and all activities and events conducted thereon, shall continue in force and effect and be enforced in the usual manner in the City municipal courts and State circuit courts, notwithstanding the acceptance of title to the property in trust by the United States and further notwithstanding any future declaration of reservation status affecting said land, provided, however, that the Menomonee Valley land may be used for such gaming purposes as are permitted by federal law on other reservation trust

land within the State of Wisconsin. This provision shall continue for the term of this Agreement.

On July 25, 1990, the tribe, school and city signed an Amendment to the Cooperation and Jurisdictional Agreement. The amendment included the following two relevant provisions:

> \* \* \* \* \* \*

> Whereas, The parties intended to prohibit any type of gaming on the Concordia College Campus property and to permit Class II gaming as defined under federal law, P.L. 100–497, 25 U.S.C. § 2701, *et seq.*, hereinafter referred to as the Indian Gaming Regulatory Act, on the Menomonee Valley land but did not intend to permit Class III gaming, as defined in the Indian Gaming Regulatory Act, unless such gaming was specifically authorized under state law and then only in strict conformance with all civil regulatory provisions of any state or local law authorizing or regulating such gaming....

> \* \* \* \* \* \*

> Now, Therefore, The parties hereto for the valuable consideration hereinafter expressed, mutually agree to the following as an amendment to the Cooperation and Jurisdictional Agreement:

> 1. The period after the word "Wisconsin" in the 14th line of [para.] 2, p. 2 of the Cooperation and Jurisdictional Agreement shall be deleted and the following ... shall be added:

>> except that Class III gaming, as defined in the Indian Gaming Regulatory Act, shall not be permitted on the Menomonee Valley land unless Class III gaming is permitted in the State of Wisconsin for any purpose by any person, organization or entity. If Class III is so authorized in the State of Wisconsin, such gaming may be undertaken on the Menomonee Valley land only if done in compliance both with the requirements of the Indian Gaming Regulatory Act and with all civil regulatory state and local laws and regulations which authorize or regulate such gaming, including but not limited to

any requirements to obtain authorizations or licenses to undertake such gaming.

Sometime before June 15, 1991, both the tribe and the State of Wisconsin signed the "Forest County Potawatomi Community of Wisconsin and State of Wisconsin Gaming Compact of 1992." Under the compact, the tribe has the right to operate certain games (referred to in the compact as Class III games, which is their classification under the Indian Gaming Regulatory Act, 25 U.S.C. § 2703(7)(B)): electronic games of chance with video facsimile displays; electronic games of chance with mechanical displays; blackjack, at the plaintiff tribe's northern Wisconsin site only (compact, § XVI(B)(1)); and pull-tabs or break-open tickets when not played at the same location where bingo is being played, and only at sites within the tribe's reservation (compact, § XVII(B)). Compact, § IV. Tribal lands are defined in the compact as including "All lands within the State of Wisconsin held in trust by the United States for the benefit of the Forest County Potawatomi Community of Wisconsin as of October 17, 1988" (compact, § III(G)(2)); and "[a]ll lands within the State of Wisconsin which may be acquired in trust by the United States for the benefit of the Forest County Potawatomi Community of Wisconsin after October 17, 1988, over which the Tribe exercises governmental power, and which meet the requirements of sec. 20 of the Act, 25 U.S.C. § 2719, which includes approximately eight acres of land in the City of Milwaukee, also known as 'Menomonee Valley land' " (compact, § III(G)(3)).

On June 10, 1992, the Milwaukee City Council approved the following resolution:

> Resolved, that the Common Council supports all efforts by the City Attorney's office, the Milwaukee Police Department and other applicable City agencies to enforce the terms and conditions of the City agreements, including, but not limited to: enforcing all applicable City anti-gambling and zoning ordinances; seeking prosecution by the Milwaukee County District Attorney's office of any violation of any applicable State anti-gam-

bling statutes; and commencing, if necessary, legal action to enforce the City's rights under the City agreements.

On August 4, 1992, Assistant Secretary Brown approved the Forest County Potawatomi Community and State of Wisconsin Gaming Compact of 1992 under the Indian Gaming Regulatory Act. Notice of the Secretary's approval was published in the Federal Register on August 10, 1992.

The plaintiff tribe has approximately 850 members, most of whom live on the tribe's 11,000 acre reservation in Forest County, Wisconsin. Poverty is prevalent among the tribal members. They and the tribal government are financially benefited by the revenue from Potawatomi Bingo, which is about $400,000 a month at this time, including revenue from both bingo and Class III gaming. This revenue is a significant source of funds for the operation of the tribal government. An interruption in the video machine revenue will jeopardize the continuation of the programs offered by the tribal government.

Since 1970, the Indian School has been providing a specially designed curriculum to meet the needs of urban Indian students in the City of Milwaukee. Income from Potawatomi Bingo has enabled the school to acquire a new campus and to begin the rehabilitation of the facility. Interruption in the flow of income from the video machine operation will curtail the rehabilitation project, require the layoff of teachers, and deny educational opportunities to students intending to begin classes at the school in September 1992. Plaintiffs have no practical alternative source of funding for the school's operation.

On August 6, 1992, defendants City and Norquist filed in the Supreme Court of Wisconsin a petition to commence an original action against Governor Thompson and Attorney General Doyle under Wis. Const. art. VII, § 3(2) and Wis.Stat. § 809.70. They sought a declaration that Wis. Const. art. IV, § 24 prohibits the casino-type gambling purportedly authorized by written agreements that the governor entered into and that his doing so exceeded the scope of his legal authority under Wis.Stat. § 14.-035. Petitioners alleged that Governor Thompson had entered into a compact with plaintiff Forest County Potawatomi Community purporting to permit the tribe to conduct gambling on Indian lands known as the Menomonee Valley land and that state law and City of Milwaukee ordinances prohibit the casino-type gambling purportedly authorized under the compact. They alleged also that the attorney general would not consent to prosecuting the tribe for engaging in gaming activities prohibited under Wis.Stat. ch. 945, but authorized under a tribal-state compact.

In a letter to the plaintiff tribe's attorney written June 9, 1992, defendant Langley said that conducting Class III gaming at the Menomonee Valley trust land would result in adverse legal consequences including enforcement actions in city and state courts, seizure of Class III gaming devices by the city, or an action to quiet title and cancel the deed to the United States in trust for the plaintiff tribe.

## OPINION

### A. *Subject Matter Jurisdiction*

■ Plaintiffs contend that jurisdiction exists under 28 U.S.C. § 1343, because they are seeking relief under 42 U.S.C. § 1983, and under 28 U.S.C. § 1362, because the action is brought by an Indian tribe with a governing body recognized by the Secretary of Interior and the matter in controversy arises under the laws of the United States, specifically the Indian Gaming Regulatory Act of 1988, 25 U.S.C. § 2701 *et seq.*, and the federal common law of jurisdiction over Indian lands. Defendants disagree, contending that only questions of state law are at issue in the dispute over the meaning of the amended city-tribal agreement and the extent to which the compact is affected or invalidated by virtue of the preexisting agreement between plaintiffs and the city defendants.

■ The presence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that an applicable federal question must appear on the face of plaintiff's properly pleaded com-

plaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Gully v. First Nat. Bank*, 299 U.S. 109, 113, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936) (a genuine and present controversy based on federal law must exist and must be disclosed on the face of the complaint). If a plaintiff's claim under the United States Constitution or federal law "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous," the suit may be dismissed for lack of subject matter jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

In their complaint, plaintiffs assert that they have a right guaranteed under the provisions of 25 U.S.C. § 2710(d) of the Indian Gaming Regulatory Act to operate up to 200 electronic gaming devices on the Menomonee Valley trust land. They contend that this right derives from the fact that the machines are being operated in conformance with a tribal-state compact entered into pursuant to 25 U.S.C. § 2710(d)(3). They seek a declaration of the tribe's right to conduct gaming under the terms of the compact. Plaintiffs' allegations raise a federal question that is neither immaterial nor frivolous but is a genuine controversy between plaintiffs and defendants over the tribe's right to conduct Class III gaming activities on the Menomonee Valley trust land.

■ For the purpose of determining subject matter jurisdiction, it is not necessary to conclude that plaintiffs are likely to succeed on their claim that they have a right under the tribal-state compact to engage in Class III gaming free of interference from the defendants. The test is not the likelihood of ultimate success on the merits but whether "the cause of action alleged is so patently without merit as to justify ... the court's dismissal for want of jurisdiction." *Hagans v. Lavine*, 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974) (quoting *Bell v. Hood*, 327 U.S. at 683, 66 S.Ct. at 776); *McGinnis v. Ingram Equipment Co., Inc.*, 918 F.2d 1491, 1494 (11th Cir.1990); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974) (test is whether right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy"). Nothing in plaintiffs' complaint suggests that their federal claims are devoid of merit or insubstantial. Indeed, by questioning the validity of the compact enacted pursuant to federal law and contesting whether the Menomonee Valley site is properly characterized as "Indian lands" under 25 U.S.C. § 2703(4)(B), defendants indicate how integral federal law is to this case. It is clear that federal law must be applied to resolve the issues before this court. Therefore, I conclude that the controversy alleged in the complaint arises under federal law and that this court has subject matter jurisdiction.

## B. *Abstention*

■ Defendants argue next that the court should abstain from deciding this case in order to allow the Supreme Court of Wisconsin to decide the petition for an original action filed by defendants City and Norquist, because resolution of the action will result in an authoritative state interpretation of the meaning of the term "lottery" in Wis. Const. art. IV, §§ 24(1) and 24(6), and, from this, an interpretation of the scope of gaming constitutionally authorized in Wisconsin at the present time. According to defendants, if the supreme court agrees to hear the petition and decides that § 24 prohibits casino gambling (such as the video games at issue here), plaintiffs would have no authority under the Indian Gaming Regulatory Act to operate the video games because the Act allows Class III gaming only if it is conducted in conformance with a tribal-state compact *and* it is located in a state that permits such gaming for any purpose by any person, organization or entity. 25 U.S.C. § 2710(d)(1). Although the state does permit such gaming within the state by other Indian tribes at the present time, this permission derives from the state's accedence to an earlier ruling of this court holding that Wisconsin is a state that permits Class III gaming by virtue of the

electorate's approval of a constitutional amendment permitting "lotteries." Defendants believe that if the state supreme court were to decide that the constitutional amendment did not express the electorate's intent to remove all prohibitions against gambling, the ruling would make it illegal for any tribes to operate Class III games, regardless of their compacts. In that event, the tribe could not rely on the existence of Class III gaming on other reservations to meet the second half of the Indian Gaming Regulatory Act's requirements for Class III gaming: that Class III gaming is permitted only if the state in which it is located permits such gaming for any purpose by any person, organization or entity.

■ Defendants' request appears to be a request for certification of a question of state law rather than a request for abstention. They have not discussed the doctrine of abstention and its four prongs: *Pullman, Younger, Burford* or *Colorado River,* or suggested why abstention might be appropriate under one or more of these cases. This case does not involve a constitutional challenge to an ambiguous state law so as to require abstention pending resolution of the ambiguity by the state courts under the holding in *Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). It does not involve an ongoing criminal or quasi-criminal proceeding implicating important *state* interests in which the plaintiffs will be able to present their federal claims. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See also Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). There is no parallel proceeding in another state or federal court, so as to make abstention proper under *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), to conserve judicial resources. Finally, the case does not involve the uniform administration of a complex state scheme to achieve an important state goal, such as was present in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), which dealt with the State of Tex-

as's efforts to achieve fair production of oil and gas in the East Texas oil field. Wisconsin has a strong stake in the administration of its gaming laws, but its interests are not the only consideration, or even the prime consideration, in the area of Indian gaming. The federal government has its own stake in ensuring the uniform and effective administration of the Indian Gaming Regulatory Act.

■ Certification is not an option that is available to federal district courts in this state. Wis.Stat. § 821.01. In the absence of a valid reason for abstaining, a district court must proceed to determine a case involving previously undetermined questions of state law without the benefit of the views of the state's highest court.

## C. Elements of Preliminary Injunction

■ A movant seeking a preliminary injunction must demonstrate: 1) some likelihood of success on the merits; and 2) that it will suffer irreparable harm absent injunctive relief. (By definition, irreparable harm means an absence of an adequate remedy at law.) *Abbott Laboratories v. Mead Johnson & Co.,* 971 F.2d 6, 11–12 (7th Cir.1992) (citing *Lawson Prods., Inc. v. Avnet,* 782 F.2d 1429, 1433 (7th Cir.1986); *Roland Machinery v. Dresser,* 749 F.2d 380, 386–87 (7th Cir.1984)). If the moving party clears both hurdles, the court must then consider: 3) the irreparable harm the moving party will suffer balanced against the irreparable harm that will be suffered by the non-moving party if the injunction is granted; and 4) whether the injunction will harm the public interest. *Abbott Laboratories,* 971 F.2d at 11–12; *Roland Machinery,* 749 F.2d at 387–88.

## 1. Likelihood of Success on the Merits

■ To satisfy the first prerequisite, plaintiffs must show that they have a better than negligible chance of prevailing ultimately on their claim that the tribal-state compact permits them to engage in Class III gaming without interference by defendants. *See, e.g., Omega Satellite Products Co. v. City of Indianapolis,* 694 F.2d 119,

123 (7th Cir.1982) (all that is needed to satisfy this burden is that "plaintiff's chances are better than negligible"); *Milwaukee County Pavers Ass'n v. Fiedler,* 707 F.Supp. 1016, 1022 (W.D.Wis.1989) (plaintiffs need not show a substantial likelihood of success on the merits).

The tribal-state compact between the plaintiff tribe and the State of Wisconsin permits certain specified forms of Class III gaming to be operated on the tribe's lands in the City of Milwaukee. Defendants are contending that the compact cannot authorize such gaming on the Menomonee Valley site for two reasons: (1) the city's agreement with the tribe conditioned Class III gaming on the tribe's compliance with *all* of the city's regulations governing gambling, including those that determine which forms of gambling may be conducted in the city; and (2) the agreement permits Class III gaming on the Milwaukee site only if the state's laws affirmatively permit the specific forms of gaming the tribe intends to offer.

The original agreement between the city and the tribe and the amended version have been incorporated into the tribal-state compact, which provides:

> XV(H) . . . games authorized and operated under this section may be located on the land known as the "Menomonee Valley land," subject to the restrictions and provisions of the Cooperation and Jurisdictional Agreement among the Tribe, the City of Milwaukee, and the Indian Community School of Milwaukee, . . ., including the amendment to that Agreement. . . .

The meaning of the amended city-tribe agreement is in dispute. Plaintiffs contend that their operation of Class III video gaming machines is consistent with the express terms of the amended agreement. They argue that although they agreed to comply with "local laws and regulations which authorize or regulate [Class III] gaming," those laws and regulations are limited to

areas of local control such as local zoning codes, building codes, and fire and health regulations. They dispute defendants' assertion that the provision in the agreement includes local laws that prohibit Class III gaming otherwise authorized by the compact and the Indian Gaming Regulatory Act. As plaintiffs argue, the entire compact would be meaningless as it applies to the Menomonee Valley trust land if the amended city-tribe agreement had the effect of eliminating completely the tribe's right to engage in Class III gaming.

Defendants counter that the amended agreement contains language requiring plaintiffs to abide by the local ordinances and regulations prohibiting Class III gaming, and that by including in the amended agreement additional language not contained in the Indian Gaming Regulatory Act, the City intended a meaning different from the Act. Defendants' argument is not compelling. The tribal-state compact was entered into by the Governor of the State of Wisconsin, in reliance on the legal advice of the state's attorney general. It was executed in compliance with the provisions of the Indian Gaming Regulatory Act, 25 U.S.C. § 2710(d). It has been approved by the Secretary of the Interior, and notice of the approval has been published in the Federal Register.

The purpose of the compact is to permit the tribe to engage in Class III gaming on both its northern Wisconsin reservation and on the Menomonee Valley site. It is not likely that the governor intended to enter into a compact that granted this right and at the same time subordinated the right to the terms of a city-tribe agreement that would prevent the tribe from conducting Class III gaming activities. It is illogical to think that the state entered into a compact with the tribe authorizing Class III gaming if the same compact does not permit any such gaming that violates a Milwaukee city ordinance.[2] Such a result

---

2. Further supporting this interpretation is the fact that the attorney general has indicated that the compact permits the operation of video gaming on the Menomonee Valley site and that he is bound to uphold the validity of the compact. Attorney General James E. Doyle's Response to Plaintiffs' Proposed Findings of Fact (restated), dkt. #26 at 5. Thus, both state and federal officials have construed the compact as

would make the compact meaningless with respect to the Menomonee Valley site, as plaintiffs contend.

If the compact language was not intended to be meaningless, it is necessary either to view the compact as superseding any provisions of the agreement between the city and the tribe or to construe the agreement as not meaning what the defendants say it does; that is, reading it as not limiting the tribe to only those Class III activities that the state affirmatively and specifically permits and that the City of Milwaukee will allow under its own ordinances and regulations. Logic and the language of the compact support such a reading. The detailed language differentiating Class III gambling permitted at the Menomonee Valley site from that permitted at the tribe's northern Wisconsin site makes it highly improbable that the drafters expected the city's ordinances to override the provisions of the compact.

Without any additional evidence and in the absence of any other reasonable interpretation, I conclude for the purpose of deciding this motion that the compact can logically be construed to permit Class III gaming on the Menomonee Valley land, and that the city-tribe agreement does not require a different construction.

Defendants raise an additional contention: that the entire compact is invalid because the Menomonee Valley site does not constitute Indian lands as defined in the Indian Gaming Regulatory Act. Even if it does, defendants argue, the site does not qualify for Class III gaming under the Act because it was not acquired until after October 17, 1988, when the law required that the governor of the state had to concur in the determination of the Secretary of the Interior that gaming on the newly acquired lands would be in the best interest of the tribe and its members and would not be detrimental to the surrounding community. 25 U.S.C. § 2719(B)(1)(a). I will not address these arguments in this opinion, in which I am determining only the likelihood of plaintiffs' ultimate success. For the purpose of this opinion, I am assuming the

validity of the compact that was approved by knowledgeable state and federal authorities. Moreover, it is questionable whether it would be proper to examine the validity of the compact at any time in this suit unless the governor is made a party and has a chance to be heard on the challenges raised by the defendants. At this time, I am satisfied that plaintiffs have demonstrated a better than negligible likelihood of success on the merits.

### 2. Irreparable Harm

██ To succeed on their motion for preliminary injunction, plaintiffs must establish that they will suffer irreparable harm without the injunction. *Roland Machinery*, 749 F.2d at 386. Plaintiffs have shown that turning off the video gaming machines will cause the Potawatomi Community and the Indian Community School to suffer significant monetary losses. Such losses will force the school to lay off teachers, cut school programs and jeopardize the educational experience of the children intending to begin classes in September 1992. The Indian Community School provides a specially designed curriculum to meet the needs of urban Indian students in the City of Milwaukee, rendering the educational experience provided by the school especially important to those students. Additionally, the loss of revenue will prevent plaintiffs from providing critical government services to the Forest County Potawatomi Community, such as safe housing for the upcoming winter, that cannot be compensated for by damages paid at a later date.

Defendants dispute plaintiffs' contention that exceptional circumstances warrant an injunction. They maintain that plaintiffs can offset their losses from video gaming with income from their Class III bingo operation. However, the present record does not refute plaintiffs' claim that they will lose significant amounts of income if they are unable to operate their video games at the Menomonee Valley site and that they do not have alternative resources

permitting Class III gaming on the Menomonee Valley land.

available to them to tide them over until this case is resolved.

■ Defendants are correct that lost profits do not constitute irreparable injury, barring exceptional circumstances. *See Downstate Stone Co. v. United States*, 651 F.2d 1234, 1241 (7th Cir.1981). Moreover, plaintiffs have failed to submit the kind of detailed allegations of harm that would be useful in determining the extent and nature of their expected loss. Although plaintiffs have provided some monetary figures, they provide only scant information concerning the percentage of their profits derived from electronic video games as opposed to Class II bingo. Had they supplied additional information, they would have made the extent of their expected loss more tangible to the court. However, plaintiffs' showing is sufficient to demonstrate that they stand to suffer harms from the loss of their video machine revenue that cannot be compensated readily at a later date. If basic services and school programs are reduced in the next few months, no amount of subsequent monetary recovery can recoup the loss to the community and to the students who depend on the continuation of specialized services. I conclude that plaintiffs have made a showing that is minimally adequate to meet the second of the four elements needed for a preliminary injunction.

### 3. Balance of Harms

■ At this point, it is necessary to determine whether the irreparable harm plaintiffs would suffer without an injunction outweighs any irreparable harm to defendants if the injunction is granted. *Roland Machinery*, 749 F.2d at 387. The more likely it is that plaintiffs will prevail on the merits, the less heavily the balance of harms need weigh in their favor. *Id.* In this case, it is necessary to balance the harm plaintiffs would suffer from the loss of video game revenues against the harm defendants would suffer in being unable to enforce their criminal and civil gambling laws and ordinances. Traditionally, there is a strong presumption against enjoining a criminal prosecution unless it is necessary

to protect constitutional rights. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746; *Downstate Stone Co. v. United States*, 651 F.2d at 1238. *See also Jackson v. Markham*, 773 F.Supp. 105, 110 (N.D.Ill.1991) (balance tips in favor of plaintiff in decision to enjoin threatened state prosecution when first amendment rights at issue).

Plaintiffs are not claiming that the Milwaukee criminal gambling ordinances deprive them of constitutional rights. Instead, they contend they are unable to exercise their federal and state rights under the compact and the Indian Gaming Regulatory Act. This difference cuts both ways. On the one hand, without a constitutional right at stake, plaintiffs have a less compelling argument for enjoining a threatened criminal prosecution. On the other hand, plaintiffs are operating their Class III activities with the stamp of approval of both the federal government and the State of Wisconsin. This is a strong indication that plaintiffs' conduct comports with the laws and policies of the State of Wisconsin and the United States. It suggests that any enforcement action defendants might take against plaintiffs would be contrary to state policy, and it weakens significantly defendants' claim that they would be injured by not being able to enforce their city ordinances. These circumstances are in marked contrast to those in *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin*, 743 F.Supp. 645 (W.D.Wis.1990). In that case, the plaintiff tribes were operating Class III gaming activities without a compact. Their activities were in obvious violation of federal law. In this case, plaintiffs have a reasonable likelihood of success on the merits and approval of their activity by state and federal authorities. The balance of harms weighs in favor of plaintiffs.

### 4. The Public Interest

■ Finally, in deciding a motion for preliminary injunction, the court must ensure that the injunction will not harm the public interest. *Roland Machinery*, 749 F.2d at 388 (citing *Yakus v. United States*, 321 U.S. 414, 440–41, 64 S.Ct. 660, 674–75,

88 L.Ed. 834 (1944)). The same considerations that make the balance of harms a close call make the effect on the public interest uncertain as well. Under ordinary circumstances the inability of a state or local government to enforce its criminal laws would disserve the public interest, but the issue is complicated in this case by the fact of the state and federal approval of Class III gaming at the Menomonee Valley site. Moreover, the harm to plaintiffs involves basic community services and access to education, the continuation of which is very much in the public interest. Based on the probable legality of plaintiffs' video gaming under state and federal law, I conclude that continuation of video gaming pending the outcome of the case does not disserve the public interest.

### ORDER

IT IS ORDERED that defendants John O. Norquist, Grant F. Langley, Phillip Arreola, Lee Jensen, City of Milwaukee, E. Michael McCann and Richard Artison are enjoined preliminarily from using local, city or state law to interfere with the operation of Class III gaming on the Menomonee Valley trust land by plaintiffs or their authorized agents, as permitted under the Forest County Potawatomi Community of Wisconsin and State of Wisconsin Gaming Compact of 1992. This gaming is limited by the terms of the compact to include only electronic games of chance with video facsimile displays and electronic games of chance with mechanical displays.

FURTHER, IT IS ORDERED that the Attorney General for the State of Wisconsin is enjoined preliminarily from prosecuting or consenting to the prosecution of plaintiffs or their authorized agents for engaging in the Class III gaming authorized by the gaming compact.