FOREST COUNTY POTAWATOMI COMMUNITY OF WISCONSIN, a federally recognized Indian tribe; Bingo Commission, Forest County Potawatomi Community; Lois Crowe, Chairperson of the Bingo Commission; and the Indian Community School of Milwaukee, Inc., a Wisconsin charitable corporation, Plaintiffs,

v.

James E. DOYLE, Individually and as Attorney General of the State of Wisconsin; John O. Norquist, Individually and as Mayor of the City of Milwaukee; Grant F. Langley, Individually and as City Attorney for the City of Milwaukee; Philip Arreola, Individually and as Chief of Police of the City of Milwaukee; Lee Jensen, Commissioner of Building Inspection, City of Milwaukee; City of Milwaukee, a municipality of the State of Wisconsin; E. Michael McCann, Individually and as District Attorney for the County of Milwaukee; and Richard Artison, Individually and as Sheriff of the County of Milwaukee, Defendants.

No. 92–C–0576–C.

United States District Court,
W.D. Wisconsin.

Jan. 26, 1993.

32. The dismissal of Case No. 92–C–58 renders moot any and all remaining motions.

Eric Dahlstrom, Rothstein, Walther, Donatelli, Hughes, Dahlstrom & Cron, Phoenix, AZ, for Forest County Potawatomi Comm., Potawatomi Comm. Bingo Comm., Jacobson, VA.

Joseph F. Preloznik, Madison, WI, for Indian Comm. School of Milwaukee.

Warren D. Weinstein, Asst. Atty. Gen., Madison, WI, for James E. Doyle.

Grant F. Langley, Milwaukee City Atty., Milwaukee, WI, for John O. Norquist, Grant F. Langley, Phillip Arreola, Lee Jensen, City of Milwaukee.

Stephen L. Morgan, Madison, WI, for E. Michael McCann.

Robert Ott, Corp. Counsel, Milwaukee County, Milwaukee, WI, for Richard Artison.

## OPINION AND ORDER

CRABB, Chief Judge.

■ This is an action for injunctive, declaratory and monetary relief in which plaintiffs seek to have defendants enjoined from using any form of state power to prevent plaintiffs and their authorized agents from operating certain gaming activities on Indian trust lands within the City of Milwaukee. In addition, plaintiffs seek a declaration of the Forest County Potawatomi Community's right to conduct such gaming under the terms of the 1992 Gaming Compact the community entered into with the State of Wisconsin, and plaintiffs seek damages for any injuries suffered as a result of unlawful acts committed by defendants in the course of their efforts to prevent the tribe and the commission from engaging in compact-authorized gaming. The case is before the court on the motions to dismiss of defendants John O. Norquist, Grant F. Langley, Philip Arreola, Lee Jensen and City of Milwaukee on the following grounds: (1) the complaint fails to state a claim for relief under 42 U.S.C. § 1983; (2) claim II of the complaint does not "arise under" the laws of the United States, and therefore, the court lacks subject matter jurisdiction under 28 U.S.C. § 1362 or § 1331; (3) the Redevelopment Authority of the City of Milwaukee and the United States of America are indispensable parties; and (4) venue is improper because defendant Doyle should be realigned as an involuntary plaintiff, thus defeating venue in the Western District of Wisconsin. Defendants Michael McCann and James Doyle have also moved to dismiss the § 1983 claim against them on the grounds that the Eleventh Amendment bars any action for damages against them in

their official capacities and that they are entitled to prosecutorial or judicial immunity. Defendant McCann also asserts that the complaint is not ripe for adjudication.[1]

■ In considering a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 72, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Yeksigian v. Nappi*, 900 F.2d 101, 102 (7th Cir.1990). The court may dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Although all reasonable inferences are to be drawn in favor of the plaintiff, the complaint must set forth factual allegations sufficient to establish the elements that are crucial to recovery under plaintiff's claim. *Sutliff, Inc. v. Donovan Cos.*, 727 F.2d 648, 654 (7th Cir.1984). Legal conclusions without factual support are not sufficient. *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir.1985).

I conclude that plaintiffs' § 1983 claim must be dismissed for plaintiffs' failure to state a claim on which relief may be granted; that this court has subject matter jurisdiction because plaintiffs have alleged claims arising under the laws of the United States; that the United States of America and the Redevelop-

ment Authority are not indispensable parties; and that venue is proper.

In deciding the motion to dismiss, I must take as true all of the well-pleaded allegations of the complaint. For that purpose only, I accept as true the following allegations of fact made by plaintiffs in their complaint.[2]

## ALLEGATIONS OF FACT

Plaintiff Forest County Potawatomi Community of Wisconsin is a federally-recognized Indian tribe. The tribe exercises governmental authority over the reservation, as well as over land held in trust for the benefit of the Potawatomi Tribe by the United States in the City of Milwaukee, except as otherwise provided by law.

Plaintiff Potawatomi Community Bingo Commission is an agency of the tribe and has comprehensive authority to conduct gaming activities on behalf of the tribe, and to issue and enforce regulations governing such activities. Plaintiff Crowe is a member of the tribe and is chairperson of the commission. Plaintiff Indian Community School of Milwaukee is a Wisconsin non-profit corporation that operates an Indian elementary school within the City of Milwaukee, on the site of the former Concordia College.

Defendant Doyle is Attorney General of the State of Wisconsin and is the chief law enforcement officer of the state. Defendant City of Milwaukee is a municipal corporation existing by virtue of the laws of the State of Wisconsin. Defendant Norquist is Mayor of the City of Milwaukee and acts as chief

1. Plaintiffs have stipulated that their complaint does not seek damages against defendants McCann and Doyle in their individual or official capacities for past conduct and that plaintiffs seek no monetary relief for future conduct as long as the preliminary injunction remains in effect. Because I am dismissing plaintiffs' § 1983 claim, I am not addressing the remaining issues raised in defendant McCann's motion to dismiss. Additionally, the "Eleventh Amendment does not bar a citizen from seeking injunctive or declaratory relief against a state official 'to conform [his or her] future conduct to the requirements of federal law.' " *Brunken v. Lance*, 799 F.2d 337, 340–41 (7th Cir.1986) (quoting *Quern v. Jordan*, 440 U.S. 332, 332, 99 S.Ct. 1139, 1140–41, 59 L.Ed.2d 358 (1979). *See also Kroll v. Bd. of Trustees of Univ. of Illinois*,

934 F.2d 904, 908 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 377, 116 L.Ed.2d 329 (1991) ("official-capacity actions may not be barred by the eleventh amendment insofar as they request prospective relief—i.e., an injunction or declaratory judgment ..."); *Toney v. Burris*, 829 F.2d 622, 626 (7th Cir.1987). As regards the remaining defendants, the Eleventh Amendment does not bar suits against municipalities or political subdivisions of a state. *See, e.g., Mt. Healthy Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

2. A more detailed discussion of the facts is contained in this court's opinion in *Forest County Potawatomi Community of Wisconsin v. Doyle*, 803 F.Supp. 1526 (W.D.Wis.1992).

executive of the city government. Defendant Langley is City Attorney of the City of Milwaukee and represents the city in all legal matters. Defendant Arreola is Chief of Police of the City of Milwaukee. Defendant Jensen is Commissioner of Building Inspection of the City of Milwaukee and under the city code is vested with authority to enforce the zoning ordinances of the city. Defendant McCann is District Attorney of Milwaukee County and is in charge of all criminal prosecutions brought in the circuit courts of the county. Defendant Artison is the Sheriff of Milwaukee County.

In the late 1980's, plaintiffs entered into negotiations with the City of Milwaukee, the Redevelopment Authority, the Bureau of Indian Affairs, the State of Wisconsin and others, to acquire two parcels of land in the City of Milwaukee for the operation of an Indian school and a gaming operation. The school was to be located on the Concordia College campus and the gaming operation was to be located on the Menomonee Valley land then owned by the Redevelopment Authority of the City of Milwaukee. As a result of the negotiations, an agreement was reached by which the two parcels of land would be acquired in trust for plaintiff tribe by the United States. The terms of the agreement were embodied in a "Cooperational and Jurisdictional Agreement" entered into by plaintiff tribe, plaintiff school and defendant City of Milwaukee and approved by the Area Director of the Minneapolis Area Office of the Bureau of Indian Affairs, United States Department of the Interior.

The agreement specified, in part, that no gaming activities of any kind would be permitted on the Concordia property but that the Menomonee Valley land "may be used for such gaming purposes as are permitted on other trust land within the State of Wisconsin." It further stated that plaintiff tribe would adopt and promulgate regulations regulating the conduct of such gaming. In addition to the Agreement, the parties also executed an amendment to the Agreement. The amendment added the following language pertaining to the type of gaming permitted on the Menomonee Valley Land:

... except that Class III gaming, as defined in the Indian Gaming Regulatory Act, shall not be permitted on the Menomonee Valley land unless Class III gaming is permitted in the State of Wisconsin for any purpose by any person, organization or entity. If Class III is so authorized in the State of Wisconsin, such gaming may be undertaken on the Menomonee Valley land only if done in compliance both with the requirements of the Indian Gaming Regulatory Act and with all civil regulatory state and local laws and regulations which authorize or regulate such gaming, including but not limited to any requirements to obtain authorizations or licenses to undertake such gaming.

On or about July 25, 1990, the Agreement, the Amendment and other documents pertaining to the transaction, including warranty deeds to the two parcels involved, were executed. On the same day, the Secretary of the Interior accepted title to those lands in trust for plaintiff tribe. Additionally, the secretary made the determinations with the concurrence of the governor that the Menomonee Valley trust lands could be used for gaming activities under the Indian Gaming Regulatory Act.

Following the execution of documents transferring the Concordia College and Menomonee Valley parcels into trust and the various leases, sub-leases and management agreements, plaintiff commission proceeded to construct a gaming facility on the Menomonee Valley land. On March 7, 1991, plaintiff commission commenced gaming activities at that facility under the name of Potawatomi Bingo. From the beginning of gaming activities at Potawatomi Bingo, the Commission has operated high stakes bingo and pull tabs as well as approximately 200 video gaming machines. In March 1992, the National Gaming Commission issued regulations declaring that video gaming machines constitute Class III gaming under the Indian Gaming Regulatory Act and thus can be operated only under the terms of a compact. Plaintiff tribe halted the use of such machines temporarily after being requested to do so by the United States Attorney.

In June 1992, the tribe and the State of Wisconsin entered into a Tribal–State compact under the terms of the Indian Gaming Regulatory Act. The compact was approved by the Secretary of the Interior on August 4, 1992. Under the compact, the tribe has the right to operate certain games (referred to in the compact as Class III games, which is their classification under the Indian Gaming Regulatory Act, 25 U.S.C. § 2703(7)(B)) including: electronic games of chance with video facsimile displays; electronic games of chance with mechanical displays; blackjack, at the plaintiff tribe's northern Wisconsin site only (compact, § XVI(B)(1)); and pull-tabs or break-open tickets when not played at the same location where bingo is being played, and only at sites within the tribe's reservation (compact, § XVII(B)). Compact, § IV. Specifically, the relevant portion of the compact states:

> XV(H) ... games authorized and operated under this section may be located on the land known as the "Menomonee Valley land," subject to the restrictions and provisions of the Cooperation and Jurisdictional Agreement among the Tribe, the City of Milwaukee, and the Indian Community School of Milwaukee, ..., including the amendment to that Agreement ...; and provided further that no more than 200 games may be operated and available for play on the Menomonee Valley land.

Defendant Norquist announced publicly his intention to close down plaintiff tribe's gaming facility and has refused any compromise under which plaintiff tribe could continue to operate the machines. Defendant Langley has repeatedly threatened criminal action against plaintiff tribe and its employees, including prosecution and seizure of the video gaming machines. In a letter to the plaintiff tribe's attorney written June 9, 1992, defendant Langley said that conducting Class III gaming at the Menomonee Valley trust land would result in adverse legal consequences including enforcement actions in city and state courts, seizure of Class III gaming devices by the city, or an action to quiet title and cancel the deed to the United States in trust for plaintiff tribe.

The gaming facility constructed on the Menomonee Valley trust land has provided plaintiff tribe with substantial income of approximately $400,000 per month, enabling plaintiff tribe to expand its provision of governmental services to its members. In addition, the facility has generated funds for operation of plaintiff school and for badly needed renovation of the school's buildings. Approximately sixty percent of the revenues have been generated by the electronic gaming machines.

## OPINION

### A. *Section 1983 Claim*

Plaintiffs assert that they have a valid claim under 42 U.S.C. § 1983 because defendants, while acting under color of state law, threaten to prevent plaintiffs from engaging in Class III gaming at Potawatomi Bingo in violation of their due process and federal statutory rights. Defendants counter that plaintiffs do not have a § 1983 claim because plaintiffs are unable to establish that defendants' actions would deprive them of any process to which they are due, that defendants' threatened action is not arbitrary or irrational, and that plaintiffs have not asserted any separate constitutional violation. In the context of a § 1983 claim, plaintiffs must establish two elements: (1) that "the conduct complained of was committed by a person acting under color of state law; and (2) ... this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). In this case, it is not contested that the alleged action is under color of state law. At issue, however, is whether plaintiffs were deprived of a protected right, privilege or immunity.

*Procedural Due Process*

To prevail on a claim that their procedural due process rights have been or will be violated, plaintiffs must establish that they will be deprived of a constitutionally protected property or liberty interest and

that defendants intend to interfere with this interest without a hearing or other appropriate process. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Plaintiffs assert that the Tribal–State compact creates a property interest in Class III gaming. Property interests are "created and their dimensions are defined by existing rules or understandings stemming from a source such as state law." *Board of Regents,* 408 U.S. at 577, 92 S.Ct. at 2709. I find that plaintiffs have a property interest in engaging in certain types of Class III gaming under the compact.[3] *See, e.g., Jit Kim Lim v. Central DuPage Hosp.,* 871 F.2d 644, 648 (7th Cir. 1989) (contract between a governmental entity and individual can create property interest). Plaintiff tribe obtains substantial revenue from Class III gaming, enabling it to expand the provision of governmental services to its members and to provide funds for operation and renovation of the school. The terms of the compact create a legitimate claim of entitlement and an expectation that plaintiffs will be permitted to continue generating revenue from Class III gaming.

The issue remains whether plaintiffs suffered a deprivation of that interest. "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedures or effecting the deprivation, and any remedies for erroneous deprivation provided by statute or tort law." *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990). Defendants assert that even if plaintiffs have a property interest, Wisconsin law grants them meaningful pre- and post-deprivation remedies and thus no constitutional violation has occurred.

In support of their argument, defendants cite the *Parratt* line of cases. In *Parratt,* 451 U.S. at 543, 101 S.Ct. at 1916–17, the Supreme Court held that although the respondent had been deprived of a property interest under color of state law, he had not alleged a due process violation because the deprivation did not occur as a result of an established state procedure and because the state provided adequate post-deprivation remedies for those who suffered a loss as a result of state action. The deprivation in *Parratt* occurred as a result of the negligent, unauthorized failure of state agents to follow established state procedures. In *Hudson v. Palmer,* the Supreme Court extended the *Parratt* holding to unauthorized intentional conduct of state employees. 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). The court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause ... if a meaningful post-deprivation remedy for the loss is available." *Id.* at 533, 104 S.Ct. at 3204. In *Zinermon,* 494 U.S. at 126, 110 S.Ct. at 983, the Court distinguished *Parratt* and *Hudson* by holding that a § 1983 action existed because the deprivation that occurred under a Florida statutory scheme for mental health commitment was not "random and unauthorized." The Court focused on the "predictable" nature of the deprivation and the extent to which additional pre-deprivation procedural safeguards could prevent that type of deprivation from occurring. *Id.*

■ In this case, there are no allegations in the complaint to support a finding that conduct by a state or local official would be "random and unauthorized." Defendants' conduct is not " 'the kind of isolated, unpredictable, and thus unpreventable conduct with which the Supreme Court purports to deal in the *Parratt v. Taylor* line of cases.' " *Easter House v. Felder,* 910 F.2d 1387, 1398–99 (7th Cir.1990) (quoting *Davidson v. O'Lone,* 752 F.2d 817, 828 (3d Cir.1984)), *cert. denied,* 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991). It is instead authorized and predictable. *Id.* at 1400. The enforcement actions would be conducted by officers acting pursuant to orders initiated by high city officials. Moreover, the threatened ac-

**3.** I express no view on the ultimate merits of plaintiffs' claim; I hold only that their complaint is sufficient to allege the existence of a property interest.

tions are predictable in that they were announced several months before the complaint was filed.

Although plaintiffs have shown that this case is not governed by *Parratt,* they cannot show that they have a claim for violation of procedural due process under § 1983. To state such a claim, they would have to show that defendants would be able to take plaintiffs' property without providing them an opportunity to be heard. They have not done this. Wisconsin law provides adequate pre- and post-deprivation procedures. For example, if plaintiffs are threatened with curtailment of their Class III gaming, they could seek an injunction in state court pursuant to Wis.Stat. § 813.02. Also, the Tribal–State compact itself provides that any dispute about the authority of the Tribe to engage in Class III gaming shall be resolved through dispute resolution procedures outlined in the compact. Compact XXII. In addition to the pre-deprivation remedies, several post-deprivation procedures are available to plaintiffs, such as the procedural guarantees of any criminal proceeding under Wisconsin law (Wis.Stats. Chs. 967–979), the procedural guarantees of any civil action brought by the city to curtail Class III gaming (Wis.Stats. Chs. 801–847) and the opportunity to pursue a tort claim against the City and its officials for any improper action (Wis.Stat. §§ 893.80 and 893.82). I conclude that plaintiffs have failed to show that they have been deprived of procedural due process or are likely to be deprived of it in the future.

*Substantive Due Process*

Plaintiffs assert that they have a substantive due process right that would be infringed if defendants take action to prevent plaintiffs from engaging in Class III gaming. The "substantive" component of the due process clause forbids "arbitrary infringements of certain personal immunities that are 'implicit in the concept of ordered liberty,'" *Wroblewski v. City of Washburn,* 965 F.2d 452, 457 (7th Cir.1992) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)), or that "shock the conscience." *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183

(1952), *overruled on other grounds by Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The Supreme Court urges courts to use caution and restraint in applying substantive due process. *See, e.g., Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 225–26, 106 S.Ct. 507, 513–14, 88 L.Ed.2d 523 (1985). The scope of substantive due process has been severely limited by the courts. *See, e.g., Saukstelis v. City of Chicago,* 932 F.2d 1171, 1173 (7th Cir.1991) ("Outside the realm of personal liberties, substantive due process may be a misnomer for the enforcement of rights expressly established in the Constitution and applied to the states through the fourteenth amendment").

Although plaintiffs contend that a substantive due process right is at issue, they fail to identify the nature of such a right or to show that they have an entitlement to such a right. *See, e.g., New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1479 (7th Cir.1990) (citing *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709) ("Before a party may assert a due process argument—procedural or substantive—it must establish that it has a 'legitimate claim of entitlement' to the right being asserted"). Plaintiffs assert merely that they have a federally-guaranteed right to engage in Class III gaming on the Menomonee Valley trust land and that if defendants undertake any prosecutorial or other enforcement action against plaintiffs it would constitute a due process deprivation of property and liberty.

Plaintiffs have failed to show that their property interest in the potential revenue and income derived from Class III gaming falls under the protection of the "substantive" due process clause. A substantive due process claim has been recognized in the context of property interests. *Swartz v. Scruton,* 964 F.2d 607, 609 (7th Cir.1992); *New Burnham Prairie Homes,* 910 F.2d at 1480. However, in this circuit a plaintiff making such a claim must allege "either a separate constitutional violation or the inadequacy of state law remedies." *New Burnham Prairie Homes,* 910 F.2d at 1481. Plaintiffs have failed to identify a separate constitutional violation and they have not dis-

puted the availability or adequacy of state law remedies.

■ Additionally, plaintiffs have not alleged a violation of a protected liberty interest implicit in the concept of ordered liberty or of a fundamental right. With respect to both property and liberty interests, "appropriate limits on substantive due process come ... from careful 'respect for the teachings of history [and] solid recognition of the basic values that underlie our society.'" *Moore v. East Cleveland*, 431 U.S. 494, 502, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977) (quoting *Griswold v. Connecticut*, 381 U.S. 479, 501, 85 S.Ct. 1678, 1690–91, 14 L.Ed.2d 510 (1965)). As the Supreme Court said about an asserted right to remain enrolled in a special medical degree program, the right to engage in Class III gaming pursuant to a compact "bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution." *Regents of University of Michigan*, 474 U.S. at 229–30, 106 S.Ct. at 516 (Powell, J. concurring). Neither plaintiffs' property interest nor plaintiffs' liberty interest rise to the level of a right protected by the substantive component of the due process clause.

■ A "restriction on a form of liberty not explicitly codified in the Bill of Rights or singled out by the courts for special protection under such rubrics as 'right to privacy' and 'fundamental rights' violates the due process clause only if utterly unreasonable—that is what 'arbitrary' means in this setting ..." *Swank*, 898 F.2d at 1252. *See also Himelstein v. City of Fort Wayne*, 898 F.2d 573, 577 (1990) (quoting *Burrell v. City of Kankakee*, 815 F.2d 1127, 1129 (7th Cir.1987)) ("'[i]n order to prevail on a substantive due process claim, [plaintiff] must allege and prove that [defendants' conduct] is arbitrary and unreasonable bearing no substantial relationship to the public health, safety or welfare'"). Defendants' conduct would violate the "substantive" due process clause only if it was utterly unreasonable or arbitrary. Because there is a dispute as to the meaning of the Cooperational and Jurisdictional Agreement and its effect on the Tribal–State compact, it would be difficult to conclude that defendants would be acting arbitrarily or unreasonably if they took actions against plaintiffs. Defendants have at least a reasonable basis for their actions.

I conclude that defendants' actions are not of the type that shock the conscience or "fly in the face of our society's standards of decency." *Wroblewski*, 965 F.2d at 458. Moreover, plaintiffs have failed to identify a liberty or property interest of the type traditionally protected under the auspices of the substantive due process clause. Therefore, plaintiffs have failed to show the violation of a substantive due process right.

*Violation of a Federal Statutory Right*

■ Section 1983 encompasses actions for violations of rights, privileges or immunities secured by federal statutory law as well as constitutional law. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). Plaintiffs contend that they have a federal statutory right under 25 U.S.C. § 2710(d)(1) of the Indian Gaming Regulatory Act to conduct Class III gaming pursuant to the Tribal–State Compact. Section 2710(d)(1) provides that:

Class III gaming activities shall be lawful on Indian lands only if such activities are—
...

(B) located in a State that permits such gaming for any purpose by any person, organization, or entity, and

(C) conducted in conformance with a Tribal–State compact entered into by the Indian tribe and the State ...

Plaintiffs argue that when a federal statute expressly grants a right to engage in activity that would be otherwise prohibited, a § 1983 action for violation of the right exists. Plaintiffs have failed to support this assertion. Moreover, I conclude that § 2710(d)(1) does not grant plaintiffs a substantive right to engage in Class III gaming.

A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983," or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself." *Wright v. Roanoke Redevelopment & Housing Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93

L.Ed.2d 781 (1987). The first inquiry is whether § 2710(d)(1) of the Indian Gaming Regulatory Act creates a federal right that is enforceable under § 1983. "Such an inquiry turns on whether 'the provision in question was intend[ed] to benefit the putative plaintiff.'" *Wilder v. Virginia Hospital Assn.,* 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (quoting *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989)). If it was, the provision creates an enforceable right unless it "reflects merely a 'congressional preference' for a certain kind of conduct rather than a binding obligation on the governmental unit." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981) (the Developmentally Disabled Assistance and Bill of Rights Act of 1975 merely declared policy and did not create substantive rights)). The statute cannot be "too vague and amorphous" because it will then be beyond the competence of the courts to enforce. *Wright,* 479 U.S. at 431–32, 107 S.Ct. at 774.

The Indian Gaming Regulatory Act was enacted to benefit Indian tribes. *See, e.g.,* 25 U.S.C. § 2701(4). However, it does not grant plaintiffs a substantive right to engage in Class III gaming. The Act requires merely that states negotiate with Indian tribes in good faith to conclude a Tribal–State compact. Class III gaming is legal only after it has been enacted pursuant to a State–Tribal compact and complies with the other terms of § 2710(d)(1). If the Indian Gaming Regulatory Act grants any enforceable right in this context it is the right of the tribe to bring an action against the state for refusal to enter into compact negotiations in good faith.

Any "right" to engage in Class III gaming is derived from and subject to the terms of the Tribal–State compact and is not a substantive right under the Act. *See, e.g.,* 25 U.S.C. § 2710(d)(2)(C) ("Class III gaming activity on the Indian lands of the Indian tribe shall be fully subject to the terms and conditions of the Tribal–State compact ..."). The purpose of the Tribal–State compact is to identify the conditions under which the tribe may engage legally in Class III gaming. This right is not granted pursuant to § 2710(d)(1). It is contingent in part upon the success of the tribal-state negotiations and the terms of the compact. Because plaintiffs have not shown that the Indian Gaming Regulatory Act creates enforceable rights, privileges, or immunities within the meaning of § 1983 it is not necessary to reach the second question of whether Congress specifically foreclosed a remedy under § 1983.

### B. *Subject Matter Jurisdiction*

Defendants assert that the court lacks jurisdiction to entertain the case because the only issues actually in dispute concern the interpretation of the language and meaning of an agreement entered into by the plaintiff tribe and the City of Milwaukee and do not implicate any federal law or constitutional provision. Moreover, according to defendants, there is no provision in the Indian Gaming Regulatory Act granting plaintiffs the right to engage in Class III gaming; this right is derived from a compact entered into between the state and the tribe. Plaintiffs contend that jurisdiction exists under 28 U.S.C. § 1343, because they are seeking relief under 42 U.S.C. § 1983, and under 28 U.S.C. § 1362, because the action is brought by an Indian tribe with a governing body recognized by the Secretary of Interior and the matter in controversy "arises under" the laws of the United States, specifically the Indian Gaming Regulatory Act of 1988, 25 U.S.C. § 2701 *et seq.,* and the federal common law of jurisdiction over Indian lands.

The presence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that an applicable federal question must appear on the face of plaintiff's properly pleaded complaint. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); *Gully v. First Nat. Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936) (a genuine and present controversy based on federal law must exist and must be disclosed on the face of the complaint). If a plaintiff's claim under the United States Constitution or federal law "clearly appears to be immate-

rial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous," the suit may be dismissed for lack of subject matter jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1945). Moreover, "[e]ven though state law creates [plaintiffs'] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983).

For the purpose of determining subject matter jurisdiction, it is not necessary to conclude that plaintiffs are likely to succeed on their claim that they have a § 1983 action under the tribal-state compact to engage in Class III gaming free of interference from the defendants. Merely because I am dismissing the § 1983 claim for failure to state a cause of action does not deprive the court of jurisdiction. The test is not the likelihood of ultimate success on the merits but whether "the cause of action alleged is so patently without merit as to justify ... the court's dismissal for want of jurisdiction." *Hagans v. Lavine*, 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974) (quoting *Bell v. Hood*, 327 U.S. at 683, 66 S.Ct. at 776); *McGinnis v. Ingram Equipment Co., Inc.*, 918 F.2d 1491, 1494 (11th Cir.1990); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974) (test is whether right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy"). Nothing in plaintiffs' complaint suggests that their § 1983 claim is completely devoid of merit or implausible.

Even if the § 1983 claim was devoid of merit, jurisdiction is valid under 28 U.S.C. § 1362, because the action is brought by an Indian tribe and the matter in controversy "arises under" the Indian Gaming Regulatory Act of 1988, 25 U.S.C. § 2701 *et seq.* Plaintiffs assert that they have a right guar-

anteed under the provisions of 25 U.S.C. § 2710(d) of the Indian Gaming Regulatory Act to engage in Class III gaming on the Menomonee Valley trust land. They contend that this right derives from the fact that the machines are being operated in conformance with a tribal-state compact entered into pursuant to 25 U.S.C. § 2710(d)(3). Without the Indian Gaming Regulatory Act, states would not be required to bargain in good faith to create compacts and Class III gaming would be illegal. Therefore, I conclude that the controversy alleged in the complaint arises under federal law and that this court has subject matter jurisdiction.

## C. *Indispensable Parties*

Defendants move to dismiss the complaint because plaintiffs have failed to join the United States and the Redevelopment Authority of the City of Milwaukee; two indispensable parties under Fed.R.Civ.P. 19(a). Rule 19(a) requires that:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring ... otherwise inconsistent obligations ...

I find that neither party is indispensable or necessary under the terms of Fed.R.Civ.P. 19.

Defendants assert that the Redevelopment Authority originally sold the Menomonee Valley land to the United States in trust for plaintiff tribe and that if the Redevelopment Authority views the Class III gaming as violating the Cooperation and Jurisdiction Agreement it could bring an action to quiet title and cancel the deed. They argue also that the United States must be joined if the Redevelopment Authority is joined because

 

the United States is the titleholder to the land at issue and recession would be possible only if the United States was a party.

To determine whether a party is necessary under Fed.R.Civ.P. 19, the court must determine whether the relief requested against the existing parties in the complaint can be granted in the absence of the party. *See, e.g., Tillman v. City of Milwaukee,* 715 F.2d 354, 358 (7th Cir.1983). In this case, plaintiffs' requested relief can be granted in the absence of the Redevelopment Authority and the United States. Plaintiffs' complaint does not seek any relief against the Redevelopment Authority or any relief effecting transfer of the land. Moreover, there is nothing to prevent the Redevelopment Authority from bringing its own recession action against the United States or seeking to intervene in the present action. Therefore, I do not find that the Redevelopment Authority and the United States of America are indispensable parties.

## D. *Venue*

Defendants argue that defendant Doyle should be realigned as a plaintiff and that this case should thus be dismissed as lacking proper venue pursuant to 28 U.S.C. § 1406(a). In the alternative they request that this case be transferred to the Eastern District of Wisconsin. They assert that it is merely the presence of the Attorney General as a defendant that creates venue in the Western District of Wisconsin. However, they contend that defendant Doyle is not aligned in interest with the other defendants, has no intention of approving any request for prosecution against the tribe and is not a necessary party to the suit.

Both parties agree that venue is proper in this case as long as the Attorney General remains a party defendant. I am unwilling to conclude that defendant Doyle is merely a formal or nominal party or that he must be realigned as a plaintiff with the resulting loss of proper venue. *See, e.g., Cheeseman v. Carey,* 485 F.Supp. 203, 210 (S.D.N.Y.1980) (any defendant who is not merely a formal or nominal party shall be considered a defendant upon whose residence venue may be based under § 1392(a)). Although defendant

Doyle may currently agree with certain of plaintiffs' arguments, he is the state officer responsible for authorizing any criminal prosecution against the tribe under the State–Tribal compact. Under the terms of paragraph XVIII(B)(1) of the Tribal–State compact, defendant Doyle must consent to prosecution of violations of the State's gambling laws alleged to have occurred on Indian lands. Moreover, as I noted when I decided that venue was proper at the commencement of this action, there are no substantial reasons why this case should be transferred.

## ORDER

IT IS ORDERED that

(1) the motion to dismiss by defendants E. Michael McCann, John O. Norquist, Grant F. Langley, Phillip Arreola, Lee Jensen, and City of Milwaukee is GRANTED on the ground that the complaint fails to state a claim for relief under 42 U.S.C. § 1983.

(2) the motion is DENIED on the asserted grounds that the complaint does not "arise under" the laws of the United States, the Redevelopment Authority of the City of Milwaukee and the United States of America are indispensable parties, and venue is improper.