FOREST COUNTY POTAWATOMI COMMUNITY OF WISCONSIN, a federally recognized Indian tribe, Gaming Commission of the Forest County Potawatomi Community of Wisconsin, Virginia Jacobson, Chairperson of the Gaming Commission of the Forest County Potawatomi, et al., Plaintiffs–Appellees,

v.

John O. NORQUIST, Individually and as Mayor of the City of Milwaukee, Grant F. Langley, Individually and as City Attorney for the City of Milwaukee, Philip Arreola, Individually and as Chief of Police of the City of Milwaukee, et al., Defendants–Appellants.

Nos. 93–3503, 94–1851 and 94–1982.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1994.

Decided Jan. 17, 1995.

Eric Dahlstrom (argued), Michael C. Shiel, Rothstein, Donatelli, Hughes, Dahlstrom & Cron, Phoenix, AZ, Richard W. Hughes, Rothstein, Donatelli, Hughes, Dahlstrom & Cron, Santa Fe, NM, for Forest County Potawatomi Community of Wisconsin, Bingo Com'n, Forest County Potawatomi Commu-

nity, Virginia Jacobson, Gaming Com'n, Forest County Potawatomi Community.

Joseph F. Preloznik, Madison, WI, for Indian Community School of Milwaukee, Inc.

Grant F. Langley (argued), Office of City Atty., Patrick B. McDonnell, Jan A. Smokowicz, Milwaukee City Attys Office, Milwaukee, WI, for John O. Norquist, Grant F. Langley, Philip Arreola, Lee Jensen, City of Milwaukee.

Warren D. Weinstein, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for James E. Doyle.

Stephen Morgan, Murphy & Desmond, Madison, WI, for E. Michael McCann.

Before CUMMINGS, PRATT* and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Forest County Potawatomi Community of Wisconsin ("Tribe") is a federally recognized Indian tribe. This case involves a dispute over the rights of the Tribe to operate video gaming machines, a Class III gaming activity, at the Tribe's Potawatomi Bingo facility located on Menomonee Valley land in the city of Milwaukee.

The Menomonee Valley land was purchased in July 1990 from the Milwaukee Redevelopment Authority by the United States to be held in trust for the benefit of the plaintiff Tribe. The land was acquired as a site for the Tribe's proposed high-stakes bingo operation. As a prerequisite to the sale of the land, the City of Milwaukee ("City") required that the Tribe enter into a Cooperation and Jurisdictional Agreement ("CJA") which would allow the city to enforce its regulatory ordinances on the Menomonee Valley land. The original CJA, signed by the Tribe on December 13, 1989, exempted the Menomonee Valley land from all local gaming regulation. On March 20, 1990, the City proposed an Amendment to the CJA "to clarify the parties' understanding with respect to the terms and conditions under which Class III gaming would be permissible

on the Menomonee Valley Land." Def.App. 140. On March 30, 1990, the City signed the original CJA and on July 25, 1990, all parties signed the Amendment to the CJA. The extent to which the Amendment subjected the Tribe's gaming to local regulation is at the heart of the present dispute.

On March 7, 1991, the Tribe commenced gaming on the Menomonee Valley land, offering for use, among other attractions, approximately 200 video gaming machines. In June 1991, *Lac du Flambeau Indians v. State of Wisconsin,* 770 F.Supp. 480 (W.D.Wis.1991), held that Wisconsin permitted Class III gaming, opening the way for tribes to negotiate Class III compacts with the State. In March 1992, the National Gaming Commission issued regulations classifying video gaming machines, like those operated at the Menomonee Valley site, as Class III gaming. In June 1992, the Tribe turned off their video gaming machines at the request of the United States Attorney for the Eastern District of Wisconsin until the Tribe entered into a compact with the State as required for Class III gaming under the Indian Gaming Regulatory Act ("IGRA"). On June 9, 1992, defendant Langley, City Attorney for Milwaukee, sent a letter to the Tribe's attorney threatening adverse legal consequences including enforcement actions in city and state courts if the Tribe continued its Class III gaming at the Menomonee Valley site.

On June 3, 1991, the Tribe and the State of Wisconsin negotiated a compact which permitted the operation of 200 video gaming machines at the Menomonee Valley site subject to the "restrictions and provisions" of the earlier CJA and the Amendment thereto. On August 4, 1992, the Secretary of the Interior approved the compact and the video gaming machines were turned back on. The Tribe commenced the present action in the Western District of Wisconsin on the same day. The Tribe's first claim alleged a violation of 42 U.S.C. § 1983. Their second claim alleged that the Tribe had a right established by the IGRA to conduct Class III gaming on its Menomonee Valley land.

---

* The Honorable George C. Pratt of the United States Court of Appeals for the Second Circuit is sitting by designation.

On September 1, 1992, the district court preliminarily enjoined defendants from using city and state law to interfere with the Tribe's Class III gaming in the city of Milwaukee. 803 F.Supp. 1526 (W.D.Wis.). On January 26, 1993, the court dismissed the Tribe's § 1983 cause of action for failure to state a claim. 828 F.Supp. 1401 (W.D.Wis.). On September 15, 1993, the district court granted the Tribe summary judgment on its second claim and permanently enjoined defendants from using local, city or state law to interfere with the operation of Class III gaming on the Menomonee Valley trust land by the Tribe or their authorized agents, as permitted under the Forest County Potawatomi Community of Wisconsin and State of Wisconsin Gaming Compact of 1992.

## Discussion

### I. Jurisdiction

█ The district court determined that it had jurisdiction to hear this case under both 28 U.S.C. § 1343—based on the Tribe's not "implausible" § 1983 claim—and 28 U.S.C. § 1362 because the action was brought by an Indian tribe and the matter in controversy arose under federal law. *Forest County Potawatomi Community*, 828 F.Supp. 1401, 1412 (W.D.Wis.1993). Defendants dispute the district court's jurisdiction. The outcome of the case, they argue, depends on the court's interpretation of the CJA, which they claim involves no federal question. Assuming for the sake of argument that the interpretation of the CJA involves no federal question, the defendants nonetheless err when they conclude that the case does not arise under federal law.

█ Because the district court found that the CJA did not prohibit the Tribe's gaming activities at the Menomonee Valley site, the court did not reach the alternative ground for decision, that the CJA was an invalid cessation of jurisdiction. Def.App. 104. This alternative ground, which the court would have had to reach if it found that the CJA barred the Tribe's video gaming machines, undoubtedly poses a federal question and points to the problem with defendants' argument. "The federal nature of the right to be established is decisive" of whether the action

arises under federal law. *Gully v. First Nat'l Bank*, 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70. The Tribe is seeking to establish the right to operate its video gaming machines free from state or city interference. That right, if it exists, is a federal right whether its source is the IGRA, the Compact, the Indian Commerce Clause or federal recognition of the inherent sovereign powers of an Indian tribe. The CJA is a possible limitation on that right and is raised by the City as a defense, not as part of the Tribe's well-pleaded complaint.

Defendants' characterization of the CJA as a private contract does not bring the Tribe's suit under the holding of *Gila River Indian Community v. Henningson, Durham & Richardson*, 626 F.2d 708 (9th Cir.1980), on which defendants rely. The Tribe is not seeking relief for breach of contract. It is seeking to enjoin defendants from violating the Tribe's claimed federal immunity.

It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. See, *Ex parte Young*, 209 U.S. 123, 160–162 [28 S.Ct. 441, 454–55, 52 L.Ed. 714] (1908). A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 2899, 77 L.Ed.2d 490; see also *Keetoowah Indians v. State of Okl. ex rel. Moss*, 927 F.2d 1170, 1173 (10th Cir.1991) ("We are persuaded that an action such as this by a tribe asserting its immunity from enforcement of state laws is a controversy within [28 U.S.C.] § 1362 jurisdiction as a matter arising under the Constitution, treaties or laws of the United States."). The fact that the district court found that the CJA, even if a valid contractual limitation on the Tribe's immunity, did not bar the Tribe's activities, does not change the fact that the source of the Tribe's right is a federal immu-

nity not a private contract. Consequently, the *Gila River* case is inapplicable.

## II. Direct Appeal

■ Defendants appeal from the district court's grant of summary judgment in favor of the Tribe. We agree with the district court's interpretation of the CJA and Amendment. The original agreement completely excluded the Tribe's gaming activities from local regulation and control. The Amendment clarified the original agreement by making explicit the conditions that had to be met before the Tribe could operate Class III gaming. Those conditions were: (1) that Wisconsin allow Class III gaming "for any purpose by any person, organization or entity," (2) that the Tribe comply with the IGRA, and (3) that the Tribe comply with all civil regulatory state and local regulations which authorize or regulate such gaming. That the first requirement has been satisfied can no longer be disputed following *Lac du Flambeau Indians v. State of Wisconsin,* 770 F.Supp. 480 (W.D.Wis.1991), and the numerous compacts which have been entered between the State and various tribes allowing Class III gaming including the operation of video gaming machines.[1] Because the Tribe has complied with the IGRA and the Tribe and State have negotiated a compact, the second requirement is met. The third requirement is met because there are no state or local laws which authorize or regulate the type of gaming conducted on the Menomonee Valley land.

■ Defendants agree that summary judgment is proper in this case, but argue that the district court misconstrued the unambiguous language of the CJA and Amendment in reaching its decision in favor of the Tribe. Defendants claim that the clear meaning of the Amendment is that Class III gaming will be allowed on Menomonee Valley land only to the same extent it is allowed elsewhere in Milwaukee. One wonders then why the Amendment did not say that. Instead the operative paragraph reads:

> Class III gaming, as defined in the Indian Gaming Regulatory Act, shall not be permitted on the Menomonee Valley land unless Class III gaming is *permitted in the State of Wisconsin for any purpose, by any person, organization or entity.* If Class III gaming is so authorized in the state of Wisconsin, such gaming may be undertaken on the Menomonee Valley land only if done in compliance both with the requirements of the Indian Gaming Regulatory Act and with all civil regulatory state and local laws and regulations which authorize or regulate such gaming, including, but not limited to any requirements to obtain authorizations or licenses to undertake such gaming. (Emphasis supplied.)

Defendants contend that this supposedly excess verbiage was a concession to the Tribe meant to assure them that if in the future Class III gaming was legalized for all of Milwaukee, the Menomonee Valley land would not be left as a restricted island. This argument is far-fetched because nothing in the CJA applies additional restrictions on the Menomonee Valley land that don't apply to Milwaukee in general. The purpose of the CJA, as seen by its designation as a "jurisdictional agreement," is to continue to allow the City to enforce certain of its civil regulatory ordinances which would not apply of their own force on Indian land. The City did not attempt nor does it have the power to enforce more restrictive regulations applicable only to Indian land within the city. Therefore, if Class III gaming were generally legal in Milwaukee, it would be legal on the Menomonee Valley land without the need for any special provisions in the CJA or Amendment.

■ The heart of defendants' textual argument is an attempt to equate the language in the second recital paragraph of the Amend-

---

1. We affirm the district court's rejection of defendants' "predicate IGRA defenses." Defendants cannot use the present suit to attack collaterally the Tribe–State compact or *Lac du Flambeau Indians v. State of Wisconsin.* Moreover, even if we were to allow such a challenge, defendants' reliance on *Rumsey Indian Rancheria of Wintun Indians v. Wilson,* 41 F.3d 421 (9th Cir.1994), is inapposite. Assuming for argument that we agree with the Ninth Circuit's reading of the IGRA (on which we express no opinion), that case does not undermine the validity of the Potawatomis' Compact under the IGRA, because Wisconsin unlike California presently permits other Indian tribes within the state to carry on the exact gaming activities being challenged here.

ment: "unless such gaming was *specifically authorized* under state law and then only in strict conformance with all *civil regulatory* provisions of any state or local law authorizing or regulating such gaming" with the operative language in the Amendment quoted above (emphasis supplied).[2] The problem with the argument is that the "specifically authorized" language does not appear in the first sentence of the operative paragraph. Instead we have the less restrictive IGRA language: "permitted in the State of Wisconsin for any purpose, by any person, organization or entity." The parties were aware of the special meaning of the included IGRA language as the test for whether gambling regulations in a Public Law 280 state, such as Wisconsin, were characterized as civil-regulatory or criminal-prohibitory, following *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244. Defendants have argued that they intended a different meaning when they used the IGRA language in the Amendment, but the uniqueness of the language and defendants' professed use of "civil regulatory" as a term of art in the second recital paragraph capturing the same distinction make this position untenable.

If there is an inconsistency, the operative language in the above-quoted first sentence of the operative paragraph of the Amendment obviously trumps the recital. In fact, the proper reconciliation is to read the IGRA standard into the meaning of "authorization" in the recital paragraph, since the "If ... so authorized" language in the operative paragraph equates the two.

■ Defendants' next contention involves the meaning of "compliance ... with all civil regulatory state and local laws and regulations which *authorize or regulate* such gaming, including, but not limited to any requirements to obtain authorizations or licenses to undertake such gaming" (emphasis supplied).

Defendants argue that the Tribe is not in compliance with local laws *prohibiting* Class III gaming generally and video gaming machines specifically. Defendants are correct in their assertion that "civil regulatory" is a term of art and that following *Cabazon* and *Lac du Flambeau* all state and local laws in Wisconsin that regulate or prohibit gambling or specific types of gambling are "civil regulatory." The problem for defendants is that the language of the Amendment goes on to limit the requirement to compliance with those civil regulatory laws which "authorize or regulate" such gaming. Defendants could have explicitly included "civil regulatory" laws which prohibit "such gaming" or could have impliedly included the whole set of civil regulatory laws by omitting the "authorize or regulate" restriction. They did neither, however, and as the district court correctly pointed out, laws that completely prohibit an activity are not the same as laws which authorize or regulate it. Because we too conclude that the CJA and Amendment by their terms do not prohibit the Tribe's gaming activities at the Menomonee Valley site, we, like the district court, do not reach the issue of the validity of the CJA as a cessation of jurisdiction.

## III. Cross–Appeal

■ Plaintiffs cross-appeal the district court's dismissal of the Tribe's § 1983 claim as well as the district court's denial of the Tribe's request for leave to amend that claim. At oral argument, counsel for the Tribe expressed his complete satisfaction with the district court's judgment as it stands. He gave two reasons why the Tribe was nonetheless pursuing its § 1983 claim: (1) to provide a firmer footing for subject matter jurisdiction, (2) to allow the tribe on remand to seek attorneys' fees under § 1988. We have already determined that the district court

---

**2.** The second recital paragraph provides as follows:

Whereas, the parties intended to prohibit any type of gaming on the Concordia College Campus property and to permit Class II gaming as defined under federal law P.L. 100–497, 25 U.S.C. § 2701, *et seq.,* and hereafter referred to as the Indian Gaming Regulatory Act, on the

Menomonee Valley land but did not intend to permit Class III gaming, as defined in the Indian Gaming Regulatory Act, unless such gaming was *specifically authorized* under state law and then only in strict conformance with all civil regulatory provisions of any state or local law authorizing or regulating such gaming (emphasis supplied).

correctly concluded that it had subject matter jurisdiction.

We further hold that under the Tribe–State Compact, the Tribe is not entitled to attorneys' fees in this action. Article XXIII(C) of the Compact allows either party to bring suit in federal court to seek declaratory or injunctive relief for "any violation of this Compact or violation of any applicable state or federal law." It further provides that "[t]he State and the Tribe will bear their own costs of litigation for any action to enforce this Compact, including but not limited to attorneys' fees."

In their second cause of action plaintiffs sought a declaration of "the rights of the parties hereto with respect to the issue of Class III gaming on the Menomonee Valley trust land as set forth in the Compact." Complaint ¶ 47. Though the defendants are primarily city officials, James E. Doyle was named as Attorney General for the state of Wisconsin, and though the dispute was primarily over the meaning of the CJA, because the CJA was incorporated by reference into the Compact, the parties' rights under the Compact were being determined simultaneously. We hold, therefore, that Article XXIII(C) of the Compact applies to this case and the Tribe is required to bear its own litigation costs including attorneys' fees. The Tribe cannot subvert this agreement by including a claim under § 1983. The language of the Compact is broad and unconditioned and includes "any action to enforce this Compact."

### Conclusion

Summary judgment for plaintiffs is affirmed. Because attorneys' fees are not available, our affirmance of the district court's judgment, which grants all other relief sought by the Tribe, renders the Tribe's § 1983 claim and the district court's denial of leave to amend it moot. We therefore affirm the district court's § 1983 dismissal without reaching the issue whether the Tribe did or could have asserted a claim under that provision.